FILED

2004 SEP 17 P 1: 25

CLERK, US DIST. COURT
EASTERN DIST. OF CALIF
AT

BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS, et al., )<br><br>Plaintiff, )<br><br>vs. )<br><br>AMERICAN INTERNATIONAL<br>SPECIALTY LINES INSURANCE<br>COMPANY, et al., )<br><br>Defendant. ) | No. CV-F-04-5930 REC/DLB<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS DEFENDANT<br>AIG TECHNICAL SERVICES<br>WITHOUT PREJUDICE AND<br>DENYING DEFENDANTS' PETITION<br>TO COMPEL ARBITRATION |

On August 30, 2004, the court heard the motion to dismiss and the petition to compel arbitration filed by defendant American International Specialty Lines Insurance Company.

Upon due consideration of the record and the arguments of the parties, the court grants defendants' motion to dismiss as against defendant AIG Technical Services without prejudice and denies defendants' petition to compel arbitration.

On May 28, 2004, Foster Poultry Farms and Foster Dairy Farms (hereinafter referred to as Foster) filed in the Fresno County

1



Superior Court a Complaint for Breach of Contract, Declaratory

Judgment and Breach of Implied Covenant of Good Faith and Fair

Dealing against American International Specialty Lines Insurance

Company (hereinafter referred to as American) and AIG Technical

Services (AIG).

The Complaint alleges that American issued an Employment

Practices Liability Policy to Foster with a policy term of

January 1, 1999 to January 1, 2002; that Foster Farms received

claims of discrimination as defined under the Policy from various

employees; that those employees brought an action against Foster

Farms (the Underlying Action); that defendants wrongfully failed

to accept Foster Farms' tender of defense and indemnity; that

defendants initially denied any obligation to defend or

indemnify; that the Underlying Action was settled but defendants

failed to indemnify Foster Farms or pay defense costs; that, on

March 24, 2004, Foster Farms demanded mediation with defendants

of Foster Farms' demands for payment under the Policy; that a

mediation was set for May 12, 2004 before James F. Thaxter; that

Judge Thaxter sent a confirming letter on April 27, 2004, which

states in pertinent part: "[T]he principal parties and any person

whose approval is needed for resolution shall personally attend

unless other arrangements have been made in advance with the

mediator. It is impossible to overstate the importance of having

all final decision makers attend personally.  Please make this a

priority"; that a week before the mediation was to occur,

defendants sent a letter to Judge Thaxter, without first

1  notifying or discussing the matter with Foster Farms, that
2  defendants refused to send an authorized decisionmaker to
3  personally attend the mediation as Justice Thaxter and all
4  established mediation procedures require, offering instead to
5  have a representative from New York participate in the mediation
6  by telephone; that Judge Thaxter responded by advising the
7  parties that the mediation scheduled for May 12, 2004 was
8  cancelled; and that defendants subsequently accused Foster Farms
9  of failing to mediate.  The First Cause of Action is for breach
10  of contract against all defendants by wrongfully denying the
11  existence of obligations and duties under the Policy, failing to
12  investigate or properly to investigate the claims against Foster
13  Farms, refusing and failing to provide and pay for or contribute
14  to the defense in connection with the Underlying Action, refusing
15  and failing to participate in the mediation and settlement
16  discussions for the Underlying Action, refusing and failing to
17  pay for or contribute to the settlement of the Underlying Action;
18  refusing to mediate the coverage matters with Foster Farms by
19  refusing to attend such proceedings personally as required and
20  prospectively repudiating the obligation to do so, and by taking
21  other action which will be identified as appropriate in advance
22  of trial of this action.  The Second Cause of Action is for
23  declaratory relief and seeks a declaration that defendants had
24  and have a duty to defend and indemnify Foster Farms and that
25  there is a single self-insured retention of $1 million applicable
26  to all claims in the Underlying Action collectively pursuant to

3

the Policy.  The Third Cause of Action is for breach of the implied covenant of good faith and fair dealing by engaging in a continuous course of conduct wrongfully to refuse to provide required benefits to Foster Farms in connection with the Underlying Action and designed to delay defendants' payment obligations for as long a period as possible.

A.  Motion to Dismiss.

Defendants move to dismiss the Complaint against AIG Technical Services on the ground that it was not a party to the Policy and, therefore, is not a proper defendant to the causes of action alleged.

Plaintiffs do not oppose granting this motion to dismiss as long as it is without prejudice and Foster Farms is granted leave to amend.

American argues that the court should not grant leave to amend because amendment would be futile.  However, Foster Farms has an absolute right to amend pursuant to Rule 15(a) because no answer has been filed notwithstanding that this court grants a defendant's motion to dismiss.  See Nolen v. Fitzharris, 450 F.2d 958 (9th Cir. 1971).  Therefore, the motion to dismiss is granted with leave to amend.

B.  Motion to Compel Arbitration.

American has filed a Motion to Compel Arbitration of the claims made by Foster Farms in the Complaint.

1.  Factual Background.

The Policy contains the following provision:

4

## L.   **ARBITRATION**

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss Amounts**, shall be subject to the dispute resolution process ('ADR') set forth in this clause.

Either the Insurer and the Insureds may elect the type of ADR discussed below, provided, however, that the **Insureds** shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the **Insureds'** choice of ADR shall control.

The Insurer and **Insureds** agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and **Insureds** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals.  In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Insured** is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions and exclusions of this policy.  In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and

the arbitrators' award shall not include
attorneys fees or other costs.  In the event
of mediation, either party shall have the
right to commence a judicial proceeding;
provided, however, that no such judicial
proceeding shall be commenced until the
mediation shall have been terminated and at
least 120 days shall have elapsed from the
date of the demand for mediation.  In all
events, each party shall share equally the
expenses of the ADR.

Either choice of ADR may be commenced in
either New York, New York; Atlanta, Georgia;
Chicago, Illinois; Denver, Colorado; on in
the state indicated in item 1 of the
Declaration's page as the mailing address for
the Named Corporation.  The **Named Insured**
shall act on behalf of all **Insureds** in
deciding to proceed with ADR under this
clause.

By letter dated March 24, 2004, Martin H. Myers, counsel for

Foster Farms, advised James P. Wagoner, counsel for defendants,

"that the insureds hereby demand non-binding mediation to resolve

the apparent disputes with AISLIC regarding the claims."  By

letter dated April 8, 2004 to Mr. Wagoner, Mr. Myers confirmed:

(1) AISLIC will participate in mediation as
demanded and is willing to waive any
requirement to use American Arbitration
Association; (2) you will let me know Monday,
April 12, 2004 whether Judge Thaxter is
acceptable to AISLIC and whether the
mediation shall proceed on May 7, 10, 12 or
13, 2004; and (3) if Judge Thaxter is not an
acceptable mediator, who AISLIC would prefer
to use, and dates of availability for
AISLIC's proposed mediator(s).

By letter dated April 26, 2004, Mr. Wagoner responded to Mr.

Myers:

... American International Specialty Lines
Insurance Company agrees to waive the
provision of the policy requiring mediation

6

1   before the American Arbitration Association
    'in accordance with its then-prevailing
2   commercial mediation rules' and will consent
    to your client's request for a mediation
3   before Honorable James Thaxter (ret.).

4   In connection with your proposed Mediation
    Brief, we request that you respond in full to
5   all of the issues raised in our past
    correspondence.  This will enable both sides
6   to fully 'air out' their contentions and
    hopefully result in a meaningful Mediation
7   before Judge Thaxter.

8   By letter to both attorneys dated April 27, 2004, Judge Thaxter

9   confirmed that the mediation would take place on May 12, 2004 and

10  further stated:

11  The principal parties and any person whose
    approval is needed for resolution shall
12  personally attend unless other arrangements
    have been made in advance with the mediator.
13  It is impossible to overstate the importance
    of having all final decision-makers attend
14  personally.  Please make this a priority.

15  By letter to Judge Thaxter (copy to Mr. Myers) dated May 3, 2004,

16  Mr. Wagoner stated:

17  In response to your letter of April 27, 2004,
    I have been advised that my client, Antonios
18  Daskalakis of AIGTS in New York, will be
    unable to personally attend the Mediation
19  scheduled for May 12, 2004.  However, he will
    be available by phone and has committed to
20  being fully briefed on the matter and
    prepared to participate as if he were
21  present.

22  By letter to Judge Thaxter (copy to Mr. Wagoner) dated May 4,

23  2004, Mr. Myers responded:

24  Mr. Wagoner's letter, received in my office
    late yesterday afternoon, was our first
25  notice that AISLIC did not intend to
    participate in the mediation with a live
26  client representative with settlement

7

authority as your letter and all customary
mediation procedures require. Of course, I
had cleared the May 12 date and scheduled it
with your office last month, only after
discussing and confirming the parties'
availability with Mr. Wagoner. I called Mr.
Wagoner first thing this morning to discuss
this matter, but he is not available.

If Mr. Wagoner's client representative with
full settlement authority is attending in
person, then certainly we are prepared to
proceed with mediation on May 12. If not,
there can be no mediation, and the Foster
insureds give notice to AISLIC that any
contractual ADR requirements in the AISLIC
policy have been satisfied or waived.

By letter dated May 5, 2004, another of plaintiffs' attorneys,

Mr. Spencer-Mork, wrote to Messrs. Beeson and Burnett, counsel

for American (with copies to Judge Thaxter and Mr. Wagoner),

stating as follows:

This will confirm our conversation this
afternoon, and the following: (1) mediation
in this matter will proceed, if at all, only
with the personal presence of an AISLIC
representative with full authority up to
policy limits to settle this case; (2) you
will contact Judge Thaxter in an effort to
hold open the mediation date of May 12, 2004
-- and confirm for us no later than 12:00
p.m., Friday, May 7, 2004 whether the
mediation will go forward with such an AISLIC
representative present; and (3) we will hold
open our availability for the May 12
mediation until 12:00 p.m. on Friday, subject
of course to Judge Thaxter's willingness to
wait.

By letter dated May 6, 2004, Mr. Burnett wrote to Messrs Myers

and Spencer-Mork (copy to Justice Thaxter) as follows:

In response to your letter addressed to the
undersigned and to Jared Beeson, during our
conversation yesterday, you stated on your
behalf of your clients that your clients

8

would not participate in a Mediation absent
the personal presence of an AISLIC
representative.  Your letter of yesterday
afternoon purporting to 'confirm our
conversation' to this effect is somewhat
unclear in that it suggests that the
undersigned and Mr. Beeson agreed that a
Mediation would not take place absent the
personal presence of an AISLIC
representative.  This was not our position at
all and no such agreement was made.  As Mr.
Wagoner stated in his letter to Justice
Thaxter of May 3, 2004, an AISLIC
representative was willing to be available by
telephone and to personally participate in
the Mediation by that medium.  AISLIC stands
ready, willing and able to mediate by this
means.  We also note that there is nothing in
the policy obligating AISLIC to have a non-
attorney representative present at the
Mediation in addition to an attorney from our
firm.

Your letter of April 5, 2004 is correct
reciting that we agreed to contact Justice
Thaxter in an effort to hold open the
Mediation date of May 12, 2004, and we in
fact did so.  If your client chooses to
cancel the Mediation unilaterally, there is
certainly nothing that AISLIC can do to
prevent that.  But as stated above, AISLIC
stands ready, willing and able to participate
in the Mediation as previously scheduled and
intends to do so in a meaningful way through
the presence of counsel and through the
availability of its claims representative via
telephone.

By letter dated May 10, 2004, Judge Thaxter advised Messrs. Myers

and Wagoner that the Mediation scheduled for May 12, 2004 "in

this matter has been cancelled" and that "[i]f you wish to

reschedule the mediation, please contact my assistant ...."   By

letter dated May 12, 2004 to Mr. Myers from Mr. Wagoner, Mr.

Wagoner stated in pertinent part:

The purpose of this letter is to address your

9

voice-mail message of Friday May 7, 2004, to
Jared Beeson.  Specifically, this letter
addresses your statement that you had not
heard back from our office and would
therefore assume that AISLIC was refusing to
participate in the May 12, 2004 mediation
before Justice Thaxter.

Your statement that our office has not
contacted you in response to your May 5, 2004
letter is incorrect.  On May 6, 2004, David
Burnett sent your office a letter explaining
that: 1) we disagreed with your position that
telephonic, as opposed to 'in-person'
participation by an AISLIC representative
would render the mediation 'useless,' and 2)
that AISLIC stands ready, willing and able to
mediate this matter.  As Mr. Burnett noted in
his letter, there is nothing in the policy
requiring AISLIC to have a non-attorney
representative present at the Mediation in
addition to an attorney from our firm.

We are in receipt of a May 10, 2004 letter
from Justice Thaxter's office stating that
the mediation 'has been canceled.'  As we did
not cancel the mediation, we can only presume
that it has been unilaterally canceled by
your office.  We find this puzzling, given
the fact that it was your office that
demanded the mediation in the first place.
AISLIC has repeatedly indicated its
willingness to participate in mediation, and
should your client desire to reconsider its
refusal to participate in mediation, we would
be happy to discuss another mediation date in
the near future.

By letter dated May 28, 2004 to Mr. Wagoner, Mr. Myers stated in

pertinent part:

First, this will respond to your letter of
May 12.  It certainly is true that as of noon
on May 7, we had received no communications
whatsoever from your office, including Mr.
Beeson or Mr. Burnett, regarding the
mediation.  My office received Mr. Burnett's
letter dated May 6 for the first time on May
10.  Assuming that Mr. Burnett has access to
a fax machine, I can assume only that your

10

office sent the letter of May 6 by ordinary
mail intending that we would not receive it
until after noon on May 7.  Every
communication I have sent to you in this
matter has been via facsimile and ordinary
mail, and you have sent me faxes several
times, so I am at a loss to understand
AISLIC's failure to timely communicate as
promised about the mediation.

Mr. Burnett's May 6 letter attempts to
sidestep what Messrs. Beeson and Burnett
actually said during the call I had with them
and with Mr. Spencer-Mork on May 5.  Your
characterization of what occurred on that
call (in which you did not participate) is
incorrect.  During that call, Messrs. Beeson
and Burnett did in fact agree that mediation
without the physical presence of an
authorized client representative was not
useful, and was not in compliance with
Justice Thaxter's procedures, and for that
reason they agreed to attempt to obtain a
personal appearance of an AISLIC
representative.  It was on that basis that we
agreed to wait until noon on the 7th to hear
back from your office whether an AISLIC
representative actually would attend so that
a mediation could proceed.  We heard nothing
until receipt of Mr. Burnett's letter on May
10.

Your 'presumption' that the mediation was
'unilaterally canceled by [my] office' is
preposterous, but unfortunately consistent
with AISLIC's apparent strategy in this
matter.  Justice Thaxter independently noted
that the mediation was canceled once it was
determined that no AISLIC representative
would attend.  Recall that Justice Thaxter's
letter to use confirming the planned
mediation - sent after I had discussed and
confirmed dates and attendance with you -
stated that '*parties* and any person whose
approval is needed for resolution *shall
personally attend* unless other arrangements
have been made in advance with the mediator.
*It is impossible to overstate the importance
of having all final decision makers attend
personally.  Please make this a priority.*
AISLIC made no contrary arrangements in

11

advance.  Rather, on the eve of the filing of
mediation briefs, without so much as a
courtesy call to me, you served notice of
AISLIC's intent not to attend the mediation
as required and previously confirmed.  There
is no question but that AISLIC repudiated any
obligation to mediate this matter in good
faith, and the Foster Insureds have satisfied
any obligation.

Second, despite AISLIC's repudiation of the
mediation process, the Foster Insureds remain
willing to mediate this matter - with an
authorized representative of AISLIC who has
full settlement authority personally,
physically present.  Please let me know if
AISLIC is willing to mediate, and if so,
exactly when.

Third, enclosed you will find Foster's
complaint against your clients, recently
filed in Fresno County Superior Court, and a
Notice and Acknowledgment form ....

By letter dated June 22, 2004, Mr. Wagoner responded to Mr.

Myers' May 28 letter, stating in pertinent part:

First, we disagree with your contention that
'AISLIC [has] repudiated any obligation to
mediate this matter in good faith ....'  As
we noted in our letters of May 3, 6, and 12,
AISLIC is ready, willing and able to
participate in mediation of this matter.

We must also disagree with your contention
that personal attendance by an AISLIC
representative was required at the originally
scheduled May 12, 2004, mediation.  As noted
in our May 6 and 12, 2004, letters, there is
no language in the policy requiring AISLIC to
have a non-attorney representative present at
the mediation in addition to a representative
consisting of an attorney from our firm.
Contrary to the assertion made in your May
28, 2004, letter, neither AISLIC nor our
office ever 'confirmed' that a non-attorney
representative for AISLIC would personally
attend the mediation.  I have spoken with
Messrs. Beeson and Burnett and have confirmed
that the *did not* agree that AISLIC's

representative would personally attend the mediation or that the representative's participation by phone would render the mediation 'useless.'

We also note that although Justice Thaxter's April 27, 2004, letter requested that the parties make personal attendance by a non-attorney representative 'a priority,' it did not state that this was an absolute requirement. Rather, Justice Thaxter stated that the parties 'shall personally attend unless other arrangements have been made in advance with the mediator.' Shortly after receiving this letter, and nine days before the mediation, our office advised both you and Justice Thaxter that AISLIC's representative would fully participate in the mediation by telephone. Justice Thaxter did not 'independently' cancel the mediation as your May 28, 2004 letter claims. Rather, you sent a May 4, 2004, letter refusing to participate in the mediation unless AISLIC's representative personally attended. It therefore appears that Foster Farms *has not* satisfied its obligation to comply with the policy's 'ARBITRATION' provision. Please be advised that AISLIC is not waiving that requirement.

. . .

In view of your client's repudiation of the mediation process by arbitrarily and unilaterally insisting on the physical presence of an AISLIC representative despite the absence of a provision in the policy to that effect and your client's failure to provide the information repeatedly requested as outlined above, AISLIC hereby demands arbitration of the dispute arising out of the allegations set forth in the complaint which Foster Poultry Farms and Foster Dairy Farms has filed in the Fresno County Superior Court and which accompanied your May 28, 2004 letter.

Without waiving the foregoing demand for arbitration, and without conceding or agreeing that a representative of AISLIC being personally present at a mediation is

> required, by the policy or otherwise, AISLIC
> is willing to have a representative
> physically present at a mediation to be
> scheduled on a convenient date.  In this
> regard, your letter of May 28, 2004 inquires
> about convenient dates.  We have available
> the following: July 20, 21, and 22, 2004,
> August 3, 4, 6, 23, 24 26, and 27, 2004.

By letter dated June 22, 2004, Mr. Myers responded to Mr. Wagoner

demand for arbitration by rejecting it.  By letter dated July 2,

2004, Mr. Myers further responded to Mr. Wagoner's June 22

letter:

> I stand behind all facts and statements in my
> prior letters.  Apparently, the Foster
> Insureds will have to submit the apparent
> dispute as to what occurred in connection
> with the previously scheduled mediation to
> the trier of fact in the Superior Court
> action.
>
> I assume that your statement 'AISLIC is
> willing to have a representative physically
> present at a mediation to be scheduled on a
> convenient date' means 'AISLIC is willing to
> have an AISLIC representative, other than its
> outside counsel, with full settlement
> authority, physically present at mediation to
> be scheduled on a convenient date.'  Please
> confirm.
>
> We are available to participate in a
> mediation in Fresno on August 24 or August 26
> and will set a day aside as soon as we
> receive your confirmation as requested above.
> . . . .

By letter dated July 8, 2004, Mr. Wagoner responded to Mr. Myers'

July 2 letter in pertinent part:

> With regard to your questions concerning the
> proposed mediation, AISLIC is willing to have
> a representative (with settlement authority),
> physically attend the mediation in addition
> to its outside counsel. In appearing at the
> mediation through these representatives

14

however, AISLIC is not waiving its right to
assert that your clients waived their right
to mediation by refusing to attend on the
baseless ground that AISLIC would be
represented by an attorney from our firm who
would be joined by another AISLIC
representative attending telephonically.  As
far as AISLIC is concerned, your client's
conduct in unilaterally canceling the prior
mediation was a material breach of its
obligation under the policy.

Nevertheless, we advise that we are available
on both August 24, 2004, and August 26, 2004,
and have no objections to the use of Justice
Thaxter.  Please advise us of the date you
would prefer, and we will contact Justice
Thaxter to confirm his availability.

By letter dated July 12, 2004, Mr. Wagoner advised Mr. Myers in

pertinent part:

Turning to your request for a Mediation on
August 24, we have ... tentatively scheduled
a Mediation for 9:00 a.m. to 5:00 p.m.  Once
we have sent a confirming letter to Justice
Thaxter's office confirming all parties are
agreeable to the date and time, Justice
Thaxter will send his initial confirmation
letter.  Our client's waiver of the policy
right to arbitrate before the American
Arbitration Association, as set forth in my
April 26, letter is still in effect.

A mediation was held before Justice Thaxter on August 24.

2.   Waiver by Foster Farms.

In moving to compel arbitration of the claims alleged in the

Complaint, American contends that Foster Farms expressly or

impliedly waived its right to choose mediation by insisting that

American's representative be personally present at the mediation

scheduled for May 12, 2004.  Consequently, American argues, the

right of selection between mediation and arbitration passed to

15

American as a matter of law.

As explained in <u>Waller v. Truck Ins. Exchange Inc.</u>, 11 Cal.4th 1, 31 (1995):

> Case law is clear that '"[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." ... The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" .... The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right.

American contends that there is nothing in the Arbitration clause of the Policy that requires a non-attorney representative to physically attend the ADR medium selected by the insured. American refers to Mr. Myers' statement in his  May 4 letter to Justice Thaxter as amounting to a waiver of the right to mediate:

> If Mr. Wagoner's client representative with full settlement authority is attending in person, then certainly we are prepared to proceed with mediation on May 12.  If not, there can be no mediation, and the Foster insureds give notice to AISLIC that any contractual ADR requirements in the AISLIC policy have been satisfied or waived.

Foster Farms responds that it "borders on frivolous" for American to contend that Foster Farms intentionally relinquished any rights under the Arbitration clause when Foster Farms insisted that American's representative by personally present at the May 12, 2004 mediation.  Foster Farms asserts that it made every effort to ensure that good faith mediation would take place and further notes that Foster Farms did not cancel the May 12,

16

1 | 2004 mediation, Justice Thaxter did.

2 |     American responds that Justice Thaxter canceled the May 12
3 | mediation because of the conduct of Foster Farms and contends
4 | that the letters quoted above establish:

5 |     AISLIC was ready, willing and able to proceed
    with the mediation with the full
6 |     participation of its claims representative
    via telephone, and by way of the physical
7 |     presence of its counsel; Foster Farms refused
    to participate absent the personal presence
8 |     of an AISLIC claims representative.  Because
    counsel for Foster Farms did not withdraw its
9 |     objection to proceed with mediation with
    AISLIC's representative participating
10 |     telephonically, Foster Farms' unequivocal
    representations that it would refuse to
11 |     proceed under these conditions left Justice
    Thaxter with no option other than to cancel
12 |     the mediation.

13 | Because Foster Farms' conduct directly resulted in the
14 | cancellation of the May 12 mediation, American asserts, it waived
15 | its right under the Policy to choose its preferred ADR option.

16 |     The court concludes that there is nothing in the record
17 | before this court from which it may be inferred by clear and
18 | convincing evidence that Foster Farms intended to waive its right
19 | to mediate the dispute with American.  While it may be arguable
20 | that Justice Thaxter's letter did not make the personal presence
21 | of an American representative mandatory, there can be no question
22 | that he considered it necessary, as did Foster Farms.  There is
23 | no explanation in the record before the court why American's
24 | representative could not personally attend on May 12 and no
25 | indication that American made any effort to seek a continuance of
26 | the mediation until its representative could personally attend.

1  American argues that Foster Farms lacked reasonable
2  justification for its refusal to proceed with the May 12
3  mediation in the absence of a personal representative.  American
4  asserts that "[a]ttendance at mediation means personal appearance
5  by lawyers and either clients or their carriers, except for those
6  located far away who are customarily allowed to appear by
7  telephone absent a court <u>order</u> to the contrary."

8  However, the cases upon which American relies do not stand
9  for this general proposition.  In <u>Kirschenman v. Superior Court</u>,
10  30 Cal.App.4th 832, 835 (1994), the issue was whether the trial
11  court had statutory authority to require the parties to
12  participate in mediation.  The issue on appeal was not the
13  definition of attendance at a mediation.  Furthermore, the court
14  reads nothing in <u>Rietveld v. Rosebud Storage Partners, L.P.</u>, 16
15  Cal.Rptr.3d 791 (2004) that supports American's proposition.

16  Foster Farms responds that American's position that it could
17  not be required to personally attend the mediation because the
18  Policy's Arbitration clause does not expressly state exactly who
19  must attend is "preposterous", contending:

20                If Defendants were correct, the Court would
              be unable to compel arbitration where the
21                parties expressly and unequivocally agreed to
              arbitrate, but failed to specify exactly who
22                must attend the arbitration or the exact
              location in which the arbitration must take
23                place.  ADR agreements are fully enforceable
              in the absence of such details ... In any
24                event, the mediator selected by the parties
              in this case expressly noted the necessity of
25                personal attendance ... and independently
              canceled the first mediation session only
26                after Defendants refused to attend [sic] ...

> Standard mediation and settlement procedures
> require personal attendance of parties ...
> The necessity of personal attendance is of
> course critical, since a settlement not
> executed in writing personally by a party or
> made personally by a party in the presence of
> an authorized judicial officer is not
> enforceable ....

Given the strong statement by Justice Thaxter in his letter and the fact of the underlying dispute between American and Foster Farms, Foster Farms' insistence that American's representative be personally present at the May 12 mediation was neither unjustified or unreasonable.  The court further concludes that it did not constitute a breach by Foster Farms of the Arbitration clause.  Consequently, and given the evidentiary standards governing a finding of waiver set forth above, the court concludes that Foster Farms did not waive its right to mediation by this insistence.[1]

Foster Farms opposes this motion to compel arbitration on the ground that it is moot because of the mediation that occurred before Justice Thaxter on August 24.

American argues to the contrary.  American refers the court to the legal proposition that "[f]or a relinquishment of a contractual rights [sic] to be binding there must be '(a) consideration, ... (b) election of one of two inconsistent rights, or (c) estoppel." American contends:

---

[1]Because of this conclusion, the court does not address American's assertion that, as a result of Foster Farms' waiver, the right of selection between mediation and arbitration has passed to American as a matter of law.

1
2
3
4
5
6
7
8
9
10
11

     In the present case, the obvious purpose of
the ADR provision contained in the AISLIC
policy is the avoidance of formal
proceedings.  That benefit, however, has been
irretrievably lost as plaintiff has proceeded
to file suit alleging both bad faith and
punitive damages.  Thus, Foster Farms has
elected to proceed with formal litigation,
contrary to the entire purpose of the ADR
clause and of the policy provision giving the
insured the right to elect either of the two
forms of ADR.  By purporting to elect
mediation and then abandoning that option
while simultaneously refusing to arbitrate
and filing suit, Foster Farms has waived and
in effect forfeited its right to mediate
under the policy.  Foster Farms cannot 'undo'
its waiver, as it has already caused AISLIC
to expend sums in defending itself in this
litigation, including compliance with initial
discovery requirements under Rule 26.

12    However, as ruled above, Foster Farms did not waive its

13 right to mediate by insisting on the presence of American's

14 personal representative and then filing this lawsuit after

15 Justice Thaxter had canceled the mediation.  Furthermore, taking

16 American's position to its logical conclusion, the motion to

17 compel arbitration should be denied because the avoidance of

18 formal proceedings contemplated by the Arbitration clause has

19 been "irretrievably lost".  More to the point, the record before

20 the court establishes that the parties agreed to set another date

21 for the mediation with the presence of American's personal

22 representative.  That mediation has occurred.  While the parties

23 advised the court at oral argument that the mediation did not

24 resolve their disputes, the fact remains that it did take place.

25 That being the case, the court concludes that arbitration should

26 not go forward after the fact of the mediation.  This is

especially the case given that mediation is non-binding and the parties are free to go to court thereafter.   If American truly believed that Foster Farms was required to arbitrate because of the cancellation of the mediation, it should not have solicited and agreed to a renewed mediation under the terms that Foster Farms wanted in the first place.   The court acknowledges that American agreed to do this while stating that it was not waiving any rights under the Arbitration clause.   Nonetheless, the court concludes that arbitration has been rendered moot by the actual mediation.[2]

ACCORDINGLY, IT IS ORDERED that defendants' motion to dismiss as against AIG Technical Services is granted with leave to amend.

IT IS FURTHER ORDERED that plaintiffs shall file a First Amended Complaint in which a claim for relief is stated against AIG Technical Services within 30 days of the filing date of this Order.   Failure to timely comply will result in the dismissal of this action against AIG Technical Services with prejudice.

---

[2]In their reply brief, defendants assert for the first time that Foster Farms' "purported attempt to mediate this dispute was mere pretense to avoid its ADR obligations under the relevant AISLIC policy."  The court disregards this assertion because it was raised for the first time in the reply brief, thereby preventing full briefing on the issue.  In addition, given that mediation has taken place, the argument is without merit.   At oral argument, American contended that the mediation that occurred on August 24 was not conducted by Foster Farms in good faith and further noting that Foster Farms' representative did not personally appear at the mediation.   However, that assertion may be a defense to any claims against American in this litigation but it cannot constitute a basis upon which to compel arbitration under the Arbitration Clause before the court.

1    IT IS FURTHER ORDERED that defendants' petition to compel

2 arbitration is denied.

3    Dated: __Sept 17__, 2004

4                                          _____
                                              ROBERT E. COYLE
5                                          UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    22

United States District Court
for the
Eastern District of California
September 20, 2004


* * CERTIFICATE OF SERVICE * *


1:04-cv-05930


Foster Poultry Farms

   v.

American Internation

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  September 20, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

REC DLB

     Martin H Myers
     Heller Ehrman White and McAuliffe
     333 Bush Street
     San Francisco, CA  94104

     Jared D Beeson
     McCormick Barstow Sheppard Wayte and Carruth
     PO Box 28912
     Five River Park Place East
     Fresno, CA  93729-8912


Jack L. Wagner, Clerk

BY:

Deputy Clerk